UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| CRAIG JOSEPH AUCOIN | CIVIL ACTION NO. 21-3686 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| MADISON CORRECTIONAL CENTER, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Plaintiff Craig Joseph Aucoin, a prisoner at Madison Parish Correctional Center ("MPCC")[1] proceeding pro se and in forma pauperis, filed this proceeding on approximately October 18, 2021, under 42 U.S.C. § 1983. He names the following defendants: Security Management, LLC, Louisiana Department of Corrections ("DOC"), Secretary James LeBlanc, "Doe 1 DOC," "Doe 2 DOC," "Doe 3 DOC," "Doe 4 DOC," MPCC, Warden of MPCC, Medical Director Damon Williams, "Medical Company MCC," "Jane Doe 1 MCC," "Jane Doe 2 MCC," "Jane Doe 3 MCC," "Jane Doe 4 MCC," and "John Doe MCC."[2]

For reasons below, the Court should dismiss the following:

(1) Plaintiff's claims against MPCC;

(2) Plaintiff's claims against Williams concerning: (a) Williams threatening him with lockdown; (b) a three-month delay in blood work; (c) not receiving a prescribed increased dosage of Robaxin, a refill of Robaxin and Cymbolta prescriptions after September 11, 2021, enough Robaxin on October 18, 2021, any Robaxin after November 30, 2021, any Prilosec after December 18, 2021, and any Cymbalta after December 30, 2021; (d) failing to transfer Plaintiff to

---

[1] Plaintiff refers to MPCC as "MCC."

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

another facility; and (e) housing Plaintiff in general population instead of in a medical dormitory;

(3) Plaintiff's Section 1983 claims against Medical Company MCC and Security Management, LLC;

(4) Plaintiff's claims against the Warden of MPCC;

(5) Plaintiff's claims: (a) that Jane Does did not ensure that he received Prilosec medication after July 18, 2021; (b) that on October 11, 2021, a Jane Doe told him that his medication "hadn't come in[,]" that it was ordered, and that she would order it again; (c) that on October 18, 2021, Jane Doe 4 "called a nurse practitioner to lower [his] dosage of Robaxin because she thought [he] was getting too much"; (d) that on November 7, 2021, Jane Doe 4 told him that a nurse practitioner was ending his Robaxin medication on November 14, 2021; (e) that on November 30, 2021, he did not receive any Robaxin; (f) that on December 27, 2021, Jane Doe 4 told Plaintiff that she would no longer supply him with Prilosec and that he would have to obtain it through the commissary; and (g) Plaintiff's Section 1983 claims against Jane Doe 1 for failing to "order medications in a timely manner[,]" failing to ensure that he received medications once they arrived, and failing to "follow up on medications that [were] ordered but not delivered";

(6) Plaintiff's claims against John Doe MCC, DOC, Secretary James LeBlanc, and DOC Does 1, 2, 3, and 4; and

(7) Plaintiff's request for a transfer and medical parole.

The Court should retain the remaining claims, including:

(1) Plaintiff's claims—under the Americans with Disabilities Act ("ADA") and Section 1983—that Williams denied him a shower chair and a walker for mobility;

(2) Plaintiff's claim that Williams refused to provide all of his medications from June 23, 2021, to July 2, 2021;

(3) Plaintiff's claim that Williams failed to ensure that he received the treatment ordered by a neurologist;

(4) Plaintiff's ADA claims (the same ADA claims above against Williams) against Medical Company MCC and Security Management, LLC;

(5) Plaintiff's claims that Jane Does 2, 3, and 4 delayed his increased dosage of Robaxin from August 3, 2021, until October 13, 2021, and delayed his Cymbalta and Robaxin medication from September 11, 2021, to October 13, 2021; and

(6) Plaintiff's negligence claim against Jane Doe 1 concerning the failure to "order medications in a timely manner[,]" ensure that he received medications once they arrived, and "follow up on medications that [were] ordered but not delivered."

## Background

Plaintiff injured his head, back, neck, shoulders, and left hip after a fall in 2017 at the Terrebonne Parish Criminal Justice Complex.  [doc. # 14, p. 1].  He is unable to walk under his own power.  *Id.*  On April 16, 2021, he was transferred to Catahoula Correctional Center ("CCC") in Catahoula Parish, Louisiana.  *Id.* at 2.  He raises several claims against several officials at CCC, but those claims are the subject of a separate proceeding.  [doc. # 15].

On May 24, 2021, a neurologist at University Medical Center "ordered another MRI on [Plaintiff's] back [and] a nerve test, recommended physical therapy, [] referred [him] to an orthopedic specialist[,]" and instructed him to return in 3-4 months.  [doc. # 1, p. 10].  Plaintiff alleges that "none of those things has been done," and he does not "have any upcoming appointments in regards to those orders and recommendations."  *Id.*

On June 22, 2021, officials at CCC transferred Plaintiff to MPCC, where he was given a wheelchair.  [doc. # 14, p. 5].  On June 23, 2021, at his medical evaluation, Plaintiff told the medical director, Damon Williams, that he needed a walker and a shower chair.  *Id.* at 6.  Williams responded that Plaintiff could not have a walker or shower chair.  Plaintiff alleges that because he lacks a shower chair, he is "forced to sit on a yellow rolling mop bucket," which exposes him to a risk of serious injury and is degrading, humiliating, and embarrassing.  *Id.*

Plaintiff claims that Williams then refused to contact CCC to obtain a complete list of his conditions and medications; as a result, Plaintiff did not receive all of his medications, causing him extreme pain.  *Id.*  When Plaintiff told Williams that he should have "doctor appointments

already scheduled," Williams "stated that he would have to let [Plaintiff] see the facility doctor." *Id.* Plaintiff claims that as of June 30, 2021, he "had yet to see the facility doctor" to ensure that he received continued treatment, appointments, and medications. *Id.*

Plaintiff "started receiving all of [his] medications" on July 2, 2021, after he filed a grievance. *Id.* at 7. On July 18, 2021, Plaintiff "ran out of [his] Prilosec prescription, and it was not refilled." *Id.* The medical staff repeatedly told him that the prescription was ordered. Plaintiff alleges that he "was forced to suffer with heartburn." *Id.*

A facility physician met with Plaintiff on August 3, 2021. *Id.* The physician prescribed Tylenol, but Plaintiff states that the facility refuses to provide Tylenol. *Id.* The physician asked Damon Williams—who was present—about a shower chair, and Williams responded that Plaintiff could not receive one because it could be used as a weapon. *Id.* The physician ordered blood work because of Plaintiff's high blood pressure, but Plaintiff claims that the blood work was "not done until almost 3 months" later on October 26, 2021. *Id.* at 7, 9. The physician increased Plaintiff's dosage of Robaxin, but Plaintiff claims that he did not receive it and that the medical staff "refused to check on it[.]" *Id.* at 7-8. The physician told Plaintiff that "she would make sure that the appointments the neurologist wanted were made[,]" but Plaintiff claims that he has not had any appointments. *Id.* at 4, 7-8. He also claims that he has not "had any follow-up appointment with the facility doctor." *Id.* at 8.

On September 11, 2021, Plaintiff received his "last Robaxin and Cymbolta[3] . . . ." *Id.* He claims, "That prescription has not been refilled." *Id.* Officials at "pill call" told him that the prescription either "has not come in yet" or that they did not know where it was. *Id.*

_____

[3] The medication is also spelled, "Cymbalta."

As of October 11, 2021, Plaintiff had not received his medications. *Id.* An official at pill call told Plaintiff that the medication "hadn't come in[,]" that it was ordered, and that she would order it again. *Id.* at 9.

On October 13, 2021, Plaintiff received all his medications. *Id.*

On October 18, 2021, Plaintiff received "less Robaxin than" he should have received. *Id.* Plaintiff asked a member of the medical staff about the discrepancy, and "she said that she called the nurse practitioner to lower [his] dosage of Robaxin because she thought [he] was getting too much." *Id.* On November 7, 2021, a member of the medical staff told Plaintiff that "they were stopping [his] Robaxin on the 14th." *Id.* at 9-10.

On November 9, 2021, Plaintiff "sent an emergency ARP to DOC headquarters[,]" informing the DOC that he was not receiving needed treatment. *Id.* at 10. Plaintiff did not receive a response, so he "sent an emergency step 2 to DOC." *Id.* He also "sent multiple letters to James LeBlanc[,]" but he did not receive a response.

On December 18, 2021, Plaintiff stopped receiving Prilosec. *Id.* On December 27, 2021, a member of the medical staff told him at pill call that he would no longer receive Prilosec, that it was discontinued, and that he could "buy it on commissary." *Id.* Plaintiff told her that "they don't sell it[,]" and she responded that the commissary would sell it and that Plaintiff could not receive it from the medical staff. [doc. #s 14, p. 10; 21, p. 8].

On December 30, 2021, Plaintiff "ran out of Cymbolta[.]" *Id.* He was "told that it was ordered." [doc. # 14, pp. 10-11].

Plaintiff maintains that his pain "continues to enhance as time passes, and his condition continues to deteriorate because of the lack of treatment." [doc. # 21, p. 11]. "He continues to lose the strength in his legs and his previous progress . . . with physical therapy diminishes

5

daily." *Id.* "His condition is debilitating and he lives with chronic pain on a constant and daily basis." *Id.*

Plaintiff asks the Court to transfer him to a DOC facility, prevent his transfer "to anywhere but a DOC facility[,]" order defendants to provide "all necessary medication and medical treatment[,]" grant medical parole, award compensatory and punitive damages, and order defendants to implement "policies to prevent these violations in the future[.]" *Id.* at 14.

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra.*

In making this determination, the court must assume that all of the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra.*  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id.*  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. MPCC

Plaintiff names MPCC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. MPCC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against MPCC.

## 3. Damon Williams

The Court should retain Plaintiff's claims—under the ADA and Section 1983—that Williams denied him a shower chair and a walker for mobility. *See generally Miles v. Rich*, 576 F. App'x 394, 397 (5th Cir. 2014); *Cadena v. El Paso Cty.*, 946 F.3d 717, 725 (5th Cir. 2020); *Buchanan v. Harris*, 2021 WL 4514694, at *3 (5th Cir. Oct. 1, 2021); *Lawson v. Dallas Cty.*, 286 F.3d 257 (5th Cir. 2002).

8

The Court should also retain Plaintiff's claim that Williams refused to provide all of his medications from June 23, 2021, to July 2, 2021.

To state a claim concerning lack of medical care, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824

(5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff uses Flexeril, Robaxin, and Cymbalta, which can all treat pain. [doc. # 14, pp. 2, 3]. He also uses Prilosec. *Id.* at 6. "Williams was made aware of Plaintiff's medical condition upon his arrival to the facility . . . ." [doc. # 21, p. 4]. Williams allegedly "was aware that Plaintiff's condition required medication to help manage his pain[.]" *Id.* On June 23, 2021, he informed Williams of all the medications he used. [doc. # 14, p. 6]. Williams responded that Plaintiff's file and "paperwork sent by CCC showed" that Plaintiff only used Prilosec. *Id.* Plaintiff "told him that was a lie and that they needed to contact CCC to get [his] full medical file . . . ." *Id.* Williams replied that officials at "CCC sent what they needed, he would not contact them, and [Plaintiff] would not get [his] other medications." *Id.*

Plaintiff lacked all but Prilosec from June 23, 2021, to July 2, 2021, when he "started receiving all" of his medications. *Id.* at 6-7. During the approximately 9-day delay, he suffered "extreme pain." *Id.* at 6. Construing the allegations liberally and in Plaintiff's favor, he plausibly alleges that he had a serious medical need, that Williams knew of, and disregarded, a substantial risk of serious harm, and that he suffered substantial harm because of the delay. *See generally Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422-23 (5th Cir. 2017) ("The pain suffered during a delay in treatment can constitute a substantial harm . . . .").

Next, the Court should dismiss Plaintiff's claim that Williams threatened him with lockdown. [doc. # 14, p. 6]. Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983).

Next, Plaintiff alleges that he told Williams that he "should have doctor appointments already scheduled[,]" but Williams responded "that he would have to let [Plaintiff] see the facility doctor."  [doc. # 14, p. 6].  By "appointments," Plaintiff presumably refers to a neurologist's May 24, 2021 instructions to return for another appointment in 3-4 months, to see an orthopedic specialist, and to undergo an MRI, a nerve test, and physical therapy.  [doc. #s 14, p. 5; 21, p. 3].

Plaintiff met with the facility physician on July 21, 2021.  [doc. # 14, p. 7].  After his visit, he did not receive any of the care that the neurologist ordered.  *Id.* at 8.  He also has not received a follow-up visit with the facility physician.  *Id.* at 7, 9.  On approximately September 29, 2021, Plaintiff informed Williams that he had not received "the right treatment or any treatment . . . ."  *Id.*  He alleges that Williams refused to ensure that his medical treatment "continued and/or that necessary appointments were made . . . ."  [doc. # 21, p. 3].  Williams "was told . . . what was recommended by the neurologist . . . ."  *Id.*

The Court should retain Plaintiff's claims that Williams failed to ensure that he received the treatment ordered by the neurologist.  To be sure, Plaintiff does not allege that he asked Williams for assistance when he first spoke with Williams; rather, he simply asserted that he had appointments scheduled.  Then, Williams did not ignore his complaints.  Instead, he instructed Plaintiff to meet with the facility physician, a response which does not bespeak deliberate indifference.  However, after Plaintiff met with the facility physician, he still did not receive his prescribed medical care, and he so informed Williams.  To date, he has not received the prescribed care.  Construing these allegations liberally and in his favor, Plaintiff states a plausible claim.  *See generally Bruce v. Little*, 568 F. App'x 283, 286 (5th Cir. 2014).

Next, Plaintiff tentatively faults Williams for the 3-month delay in receiving blood work. Plaintiff does not allege, however, that he suffered substantial (or any) harm as a result of the delay.  Thus, the Court should dismiss this claim.

Next, Plaintiff appears to fault Williams for the following lapses in his medications and treatment:

   ° A facility physician increased Plaintiff's dosage of Robaxin, but Plaintiff did not receive it and the medical staff "refused to check on it[.]"

   ° On September 11, 2021, Plaintiff received his "last Robaxin and Cymbolta . . . ."  "That prescription has not been refilled."  Officials at "pill call" told him that the prescription either "has not come in yet" or that they did not know where it was.

   ° As of October 11, 2021, Plaintiff had not received his medications.  An official at pill call told Plaintiff that the medication "hadn't come in[,]" that it was ordered, and that she would order it again.

   ° On October 18, 2021, Plaintiff was "given less Robaxin than" he should have received.  Plaintiff asked a member of the medical staff about the discrepancy, and "she said that she called the nurse practitioner to lower [his] dosage of Robaxin because she thought [he] was getting too much."  On November 7, 2021, a member of the medical staff told Plaintiff that "they were stopping [his] Robaxin on the 14th."

   ° On December 18, 2021, Plaintiff stopped receiving Prilosec.  On December 27, 2021, a member of the medical staff told him at pill call that he would no longer receive Prilosec, that it was discontinued, and that he could "buy it on commissary."  Plaintiff told her that "they don't sell it[,]" and she responded, "well they will, and we won't give it to you."

   ° On December 30, 2021, Plaintiff "ran out of Cymbolta[.]"  He was "told that it was ordered."

Plaintiff appears to fault Williams for all of the above, alleging that Williams "does not implement or enforce adequate policies to prevent the violations" and "does not supervise his subordinates to make sure they are doing their jobs properly. . . ."  [doc. #21, p. 3].  Williams

allegedly "refused to ensure that Plaintiff's prescriptions were filled in a timely manner" and "allowed his subordinates to interfere with Plaintiff's prescriptions[.]" *Id.*

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Plaintiff does not plausibly allege that Williams affirmatively participated in any of the above acts or omissions or that there was a sufficient causal connection between Williams' conduct and any alleged constitutional violation.[5] While Plaintiff suggests that he complained to Williams after each event bulleted above, he does not allege that Williams was involved in any event.[6] Instead, Plaintiff essentially pleads only vicarious liability, blaming Williams for each

---

[5] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

[6] *See Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) ("[I]it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation."); *see also Taylor*, 2004 WL at *1 ("claims that [] defendants violated [a plaintiff's] constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Robinson*

and every disparate action or omission by various unnamed personnel. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . ."); *Sanchez v. Moore*, No. 20-40349, 2021 WL 5913305, at *1 (5th Cir. Dec. 14, 2021) ("His conclusory assertions that Sifuentes was liable in his role as a supervisor because he did not get involved with the law library policies or the issuance of a medical pass do not establish an affirmative participation in the denial of his rights or the implementation of unconstitutional policies by Sifuentes.").

For claims of failure to promulgate policy or failure to train, a "plaintiff ordinarily must show [a] pattern of similar constitutional violations, because without notice of prior constitutional violations, a supervisor can hardly be said to have acted deliberately indifferent." *Grant v. LeBlanc*, 2022 WL 301546, at *5 (5th Cir. Feb. 1, 2022). Plaintiff here does not allege a pattern of similar constitutional violations. Plaintiff cursorily mentions that "everyone in the facility has been having trouble with getting their prescriptions filled once they run out." [doc. # 14, p. 8]. But he does not describe or elaborate on others' experiences; for example, he does not allege how long, how often, or for what ailments others lacked medications. Consequently, he does not plausibly allege that others' experiences were sufficiently similar to his varied and fragmented experiences.[7] *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th

---

*v. U.S., Fed. Bureau of Investigation*, 185 F. App'x 347, 348 (5th Cir. 2006) ("The alleged failure to investigate complaints and to take action in response to them does not provide a basis for a civil rights suit.").

[7] For conduct to be sufficiently widespread, it must have "occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984). The pattern requires "similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (*quoting Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d

14

Cir. 1997) (observing that a description of a policy or custom cannot be conclusory and finding the following conclusory: allegations that a police department disregarded the rights of other African American citizens); *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021) ("'I was treated unprofessionally' plus 'eighty-two generic complaints' does not equal facts that plausibly show a single comparable incident that would support an inference of a specific custom of violating constitutional rights.").

Plaintiff also does not allege that Williams implemented an explicit unconstitutional policy that deprived him of constitutionally adequate medical care. *See Alderson*, 848 F.3d at 421. Accordingly, the Court should dismiss the claims against Williams bulleted above.

Next, Plaintiff claims that Williams refused to transfer him "to a DOC facility that is closer to the doctors he was already seeing and so Plaintiff could receive the medical care MCC could not provide . . . ." [doc. # 21, p. 3]. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000). The Court should dismiss this claim.

Finally, Plaintiff claims that he is "at risk of further injury" because he is housed "in general population instead of a medical dorm which the facility does not have . . . ." [doc. # 21,

---

375, 383 (5th Cir. 2005)). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (*quoting McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989)).

p. 4]. Plaintiff does not define or describe the "medical dorm" that he lacks, and he does not explain why the "general population" dormitory is inadequate. The Court should dismiss this conclusory claim.

**4. Medical Company MCC and Security Management, LLC**

Plaintiff sets forth several allegations against MPCC, but as above MPCC is unamenable to suit. That said, Plaintiff states that the allegations against Medical Company MCC and Security Management, LLC, are the "same as described in the section for" MPCC. [doc. # 21, pp. 4, 8].

The Court should retain Plaintiff's ADA claims—the same ADA claims above against Williams—against these two defendants because the ADA is a "vicarious liability statute[.]" *Phillips next friend of J.H. v. Prator*, 2021 WL 3376524, at *4 (5th Cir. Aug. 3, 2021). Construing his allegations liberally, including his allegation that MPCC is privately owned, he suggests that one or both defendants employed Williams.

As above, however, vicarious liability does not apply to Section 1983 claims. Thus, to the extent Plaintiff seeks relief from these defendants under Section 1983 due to Williams denying him a shower chair and walker, the Court should dismiss the claims.

The Court should also dismiss Plaintiff's remaining Section 1983 claims against these two entities.

Private prison management companies can be found liable only if they cause the constitutional violation at issue, for example, by establishing an unconstitutional policy or custom. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To recover, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that

policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (*citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

　　To demonstrate that the policy was the "moving force" behind a constitutional violation, a plaintiff must "demonstrate a direct causal link between the [] action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "[T]he connection must be more than a mere 'but for' coupling between cause and effect." *Valle v. City of Houston*, 613 F.3d 536, 546 (5th Cir. 2010) (*quoting Thompson v. Connick,* 578 F.3d 293, 300 (5th Cir. 2009)).

　　Here, Plaintiff first alleges, formulaically : "Having policies, or lack of, which violate inmates' rights.  Failing to address and/or abate violations when they are brought up.  Failing to make sure employees follow policies, rules, laws, etc."  [doc. # 14, p. 11].  In an amended pleading, Plaintiff alleges :

> [MPCC] does not have policies and/or procedures to provide the proper medical care, and/or equipment to those who have disabilities and who are in need of certain medical treatment, such as the Plaintiff; Does not have an adequate medical care program to provide adequate medical care or does not ensure that adequate medical care is provided to its inmates; Does not have policies or procedures to ensure prescriptions are filled in a timely manner; Does not have a safe place to house inmates with medical problems and/or disabilities and houses them in general population instead; Does not make arrangements to have inmates transferred which the facility is not equipped to house.

> These all violated the Plaintiff's constitutional rights because it deprived him of adequate medical care; forced him to go without medication to help manage his pain which caused him to endure extreme and unnecessary pain; delayed his medical treatment by not ensuring the appointments requested by the neurologist were set  or that the facility's doctor's orders were followed; caused the Plaintiff not to get the medical equipment he needs, such as, a walker or shower chair.

> Due to the lack of medical care and/or proper medical equipment, the Plaintiff's condition got and continues to get worse.  Not providing him with the proper equipment to shower with put him at risk of serious harm and also humiliated him.  These actions and/or inactions also delayed his medical treatment.

> These violations happened from the time of Plaintiff's arrival to MCC on 6-22-2021 to present. [sic].

[doc. # 21, pp. 1-2].

Plaintiff does not plausibly identify a policy; rather he presents a spate of vague and conclusory allegations. *See Spiller*, 130 F.3d at 167 ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."); *Doe v. Harris Cty., Texas*, 751 F. App'x 545, 550 (5th Cir. 2018) ("The simple allegation that a 'policy or custom' existed, without reference to a specific policy or custom, is precisely the sort of formulaic pleading that does not pass muster under *Iqbal*.").

Plaintiff's allegations that MPCC lacked policies to prevent constitutional violations are similarly conclusory. *See Robles,* 797 F. App'x at 834 ("The Robles' claim that Aransas County has a custom or practice of 'not having the proper policies in place to prevent the Constitutional violations suffered by plaintiffs.' The Robles offer no basis for that claim other than the conclusory allegation itself."); *Martinez v. City of N. Richland Hills*, 846 F. App'x 238 (5th Cir. 2021) (arrestee failed to state a claim when he alleged that a city failed to train detention officers on how to provide medical care; arrestee's complaint did not contain any specific city policy and did not allege that any unidentified custom or policy was the moving force behind the officers' alleged misconduct).

Plaintiff's allegations are akin to the insufficient "blunderbuss phrasing" of allegations in *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). Plaintiff does not identify any custom, practice, or pattern of sufficiently similar events which would either amount to a policy of failing to provide care or would place defendants on notice of the need for a policy.[8] Rather,

---

[8] *See Calhoun*, 855 F. App'x at 922 ("Calhoun averred that Houston had a policy of 'failing' to 'properly discipline,' 'restrict,' and 'control' its employees. But such conclusory allegations are

he alleges only disparate lapses or delays in *his* medical care. "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578.[9]

Plaintiff briefly mentions that the facility physician prescribed, *inter alia*, Tylenol and that the "facility refuses to provide" it. [doc. # 14, p. 7]. Plaintiff does not plausibly describe a policy; he does not specify whether he means that the facility does not provide the medication to *him* or if he means that the facility does not provide Tylenol to any prisoners. He also does not specify whether the facility provides, for example, an alternative medication or a generic brand.

Even assuming he did plausibly allege a policy, he does not allege that the putative policy was the moving force behind any constitutional violation. To explain, he states that he received all of his medication on October 13, 2021, and he does not mention a lack of Tylenol after that date. He does not allege that he suffered substantial harm due to the delay. [doc. # 14, p. 9]. While he alleges that he suffered pain, he does not maintain that the lack of Tylenol caused his

---

insufficient to state a claim."); *Peterson*, 588 F.3d at 838 (noting that a "pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances'" and concluding that twenty-seven previous incidents did not establish an official policy); *Gomez v. Galman*, 18 F.4th 769, 779 (5th Cir. 2021) (observing that in "the failure-to-train context, deliberate indifference may be established" by pleading "that a municipality had notice of a pattern of similar violations at the time the plaintiff's own rights were violated.").

[9] *See Clark*, 850 F. App'x at 207 ("Ultimately, Clark alleges no facts other than those of his own case plus speculation and conclusory allegations. . . . [P]lausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury."); *Clyce v. Hunt Cty., Tex.*, 515 F. App'x 319, 325 (5th Cir. 2013) (county did not have a policy or custom of delaying medical care, where the plaintiffs offered evidence relating only to the plaintiff); *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (finding no claim against a county because the plaintiff only described "events that gave rise to" his lawsuit); *Cardenas v. Lee Cty., Tex.*, 569 F. App'x 252, 256 (5th Cir. 2014) ("That [two prisoners] received [medical care] either too early or too late may indicate, as the district court suggested, a failure in judgment by the prison officials. These two isolated failures in judgment cannot, however, establish a custom or policy of denying medical care to inmates.").

19

pain; rather, he suggests that the pain was because he lacked his other pain medications, Robaxin and Cymbalta.  The Court should dismiss these claims.

### 5. Warden of MPCC

Plaintiff claims that the warden allowed "the people under his command to violate the inmate's rights."  [doc. # 14, p. 11].  He goes on: "Failing to abate any wrongs being done. Failing to make and/or implement adequate policies.  Failure to reprimand his subordinates. Failure to properly train employees. [sic]."  *Id.*  To the extent Plaintiff raises these allegations as stand-alone claims, the Court should dismiss them as formulaic and conclusory.

In an amended pleading, Plaintiff alleges:

> [The warden] [d]oes not have a dorm to house inmates with medical conditions; Does not make arrangements to have inmates with medical conditions in which MCC is not equipped to house and/or able to provide proper medical care transferred to a DOC facility; Does not make sure facility's medical department is providing adequate medical care to the inmates; Does not address problems and/or violations committed that are brought to his attention by ARP's or requests; Does not implement and/or enforce policies that ensure an inmate's rights are not violated; Did not make sure Plaintiff received the proper medical treatment and equipment once made aware Plaintiff was not getting such things; Does not reprimand his subordinates when violations are committed.

> The Warden was made aware of Plaintiff's complaints through the ARP process and also requests which the Plaintiff sent through the inmate mail system on the dates provided in the previous "complaint" pleadings, and the Warden was deliberately indifferent because of his failure to address and/or abate violations. Plaintiff's condition has gotten worse and continues to do so.  Plaintiff has been forced to endure unnecessary pain and suffering.  Plaintiff's medical treatment has been intentionally delayed. The Warden has never answered any of Plaintiff's ARP's or requests. [sic].

[doc. # 21, p. 5].

The Court should dismiss Plaintiff's claims concerning (1) the lack of a dorm to house inmates with medical conditions and (2) the failure to transport him to a "DOC facility."  *See* Section 3, *supra*.

The Court should also dismiss Plaintiff's claim that the warden does not respond to his grievances. A prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

As to Plaintiff's remaining claims against the warden, he does not plausibly allege that the warden affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between the warden's conduct and any alleged constitutional violation. While Plaintiff states that he complained to the warden following alleged unlawful acts or omissions, he does not allege that the warden was involved in any event. Instead, Plaintiff essentially pleads only vicarious liability, blaming the warden for disparate acts or omissions of various other personnel.

Further, with respect to his claims of failure to promulgate policy, Plaintiff does not allege a pattern of similar constitutional violations. Nor does he allege that the warden implemented an explicit unconstitutional policy, practice, custom, or procedure that deprived him of constitutionally adequate medical care.

Finally, Plaintiff claims that the warden failed to reprimand his subordinates, suggesting that the warden ratified his subordinates' actions. However, Plaintiff lists many actions/omissions throughout his pleadings, but he does not specify which the warden ratified. As above, he also fails to identify any policy, pattern, custom, or practice that the warden could have ratified. *See Fraire*, 957 F.2d at 1278 (finding a claim "wholly insufficient" where the plaintiffs alleged only that a city ratified an officer's actions because the city refused to discipline the officer and knew that the officer's version of the event was false); *Fergason v. Smith*, 189 F.3d 468 (5th Cir. 1999) ("Fergason's claim against Smith County is equally unavailing because he has not alleged an official custom or policy or the ratification of an unofficial custom or policy which led to the alleged denial of medical treatment."); *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 922 (5th Cir. 2021) ("Calhoun averred that Houston had a policy of 'failing' to 'properly discipline,' 'restrict,' and 'control' its employees. But such conclusory allegations are insufficient to state a claim.").

Moreover, a ratification theory is limited to "extreme factual situations." *Robles v. Ciarletta*, 797 F. App'x 821, 834 (5th Cir. 2019). Plaintiff does not identify any sufficiently extreme actions. *See id.* (finding the following insufficiently extreme: officers dragged a man out of his truck, "slid him across the ground when he fell out, handcuffed him, pulled him up from the ground by his handcuffs, slammed him against his truck, and executed a knee strike to his thigh which resulted in two surgeries and a two-week hospital stay.").

The Court should dismiss Plaintiff's claims against the warden.

**6. Jane Does**

Plaintiff raises a host of allegations against Jane Doe 1 MCC and Jane Doe 2 MCC.  [doc. # 21, p. 6].  He states that his claims against Jane Doe 3 MCC are the same as his claims against Jane Doe 2 MCC.  *Id.* at 7.  With some exceptions, he also states that his claims against Jane Doe 4 MCC are the same as his claims against Jane Doe 2 MCC.  *Id.*

Distilled, Plaintiff broadly claims that the Jane Does refused to ensure that he timely and consistently received all of his medication.  *Id.* at 6-7.  He refers the Court to his previous pleadings for more information.

In his previous pleadings, he first claims that he suffered heartburn because on July 18, 2021, he "ran out of [his] Prilosec prescription, and it was not refilled."  [doc. # 14, p. 7].  The medical staff repeatedly told him that the medication was ordered.  *Id.*  The staff's response that they ordered the prescription does not reflect deliberate indifference.  *See Hanna v. Corr. Corp. of Am.*, 95 F. App'x 531, 533 (5th Cir. 2004) ("Hanna did not allege sufficient facts to show that the unavailability of the [heartburn] medication resulted from deliberate indifference . . . .").

Moreover, on October 13, 2021, Plaintiff received all of his medications.  [doc. # 14, p. 9].  He does not plausibly allege that he suffered substantial harm as a result of the delay.  *See Galvan v. Calhoun Cty*., 719 F. App'x 372, 374 (5th Cir. 2018).  While he does at times allege that he suffered pain, he does not specify which of his many claims to which he refers.  As to the instant claim, he only maintains that he suffered from heartburn at an unspecified time.  *See Stedman v. Dunn*, 98 F. App'x 769, 771 (10th Cir. 2004) (finding no substantial harm where the plaintiff suffered from heartburn); *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) ("Westfall

says only that she 'was moaning in pain' while waiting in the back of the police car, without more details as to the severity of her pain. This is not substantial harm.").

Next, Plaintiff claims that on August 3, 2021, the facility physician increased his dosage of Robaxin, but he did not receive the increased dosage until October 13, 2021. [doc. # 14, pp. 7-9]. He asked members of the medical staff about his increased dosage, but they responded that they "did not know about it and they refused to check on it[.]" *Id.* at 8. Plaintiff appears to fault Jane Does 2, 3, and 4. [doc. # 21, pp. 6-7]. He alleges that he asked them about the missing medication on a daily basis during pill call, that they "knew he was prescribed those medications[,]" and that he suffered extreme pain as a result of the delay. *Id.* at 7. That Plaintiff still received some medication suggests that defendants were not necessarily deliberately indifferent. However, the defendants allegedly ignored his complaints about his prescribed increased dosage, and he suffered extreme pain (i.e., substantial harm) as a result of the delay. Liberally construed, the Court should retain this claim against Jane Does 2, 3, and 4.[10]

Plaintiff next alleges that on September 11, 2021, he received his "last Robaxin and Cymbolta . . . ." *Id.* at 8. Officials at "pill call" repeatedly told him that the prescription either "has not come in yet" or that they did not know where it was. *Id.* "Other times they would give other excuses. [sic]." *Id.* On October 11, 2021, someone told Plaintiff that the "pill log book[,]" which he maintains was "never on the pill cart[,]" showed that he refused his medication three consecutive days. [doc. # 21, p. 9]. Plaintiff surmises that this is evidence that defendants "try to cover up their wrongs" because he did not refuse his medications. *Id.* Again, he received all

---

[10] *See Adams v. Duke*, 73 F. App'x 766 (5th Cir. 2003) (finding a plausible claim where a prisoner alleged that he contracted an infection due to a twenty-nine-day delay in receiving medication because a nurse knowingly failed to order the medication, refused the prisoner's request to see a physician, and instead attempted to evaluate the prisoner's progress under medication she failed to order).

of his medications on October 13, 2021.  Similar to the claim above, the Court should retain this claim against Jane Does 2, 3, and 4.

Plaintiff alleges that on October 11, 2021, an official at pill call told him that the medication "hadn't come in[,]" that it was ordered, and that she would order it again.  [doc. # 14, p. 9].  To the extent Plaintiff seeks relief for this allegation, he fails to state a plausible claim because the official's response—ordering the medication again—does not constitute deliberate indifference.  The Court should dismiss this ostensible claim.

On October 18, 2021, five days after the approximate date that Plaintiff filed this proceeding,[11] Plaintiff received "less Robaxin than" he should have received.  [doc. # 14, p. 9].  Plaintiff asked Jane Doe 4 about the discrepancy, and "she said that she called the nurse practitioner to lower [his] dosage of Robaxin because she thought [he] was getting too much." [doc. #s 14, p. 9; 21, p. 7].  Plaintiff claims that Jane Doe 4 "interfered with [his] prescribed medications by getting the dosage prescribed by the facility doctor lowered because she believed the dosage was too high[.]"  [doc. # 21, p. 7].  Plaintiff, however, simply disagrees with defendant's—and the treating nurse practitioner's—medical opinion.  He does not allege that Jane Doe 4 intentionally treated him incorrectly; rather, he alleges that for unknown reasons she thought his dosage was too high.  A nurse practitioner agreed, and Plaintiff does not allege that Jane Doe 4 lied to, or plotted with, the physician with the intent to render incorrect treatment. The Court should dismiss this claim.[12]

---

[11] [doc. # 1, p. 5].

[12] *See Blaylock v. Revell*, 67 F. App'x 243 (5th Cir. 2003) (finding that an allegation that one physician "refused to continue [the plaintiff] on the pain medication that had been prescribed by [another physician was] a disagreement over the type of medical care received, and, therefore, it [did] not rise to the level of a constitutional violation.").

Next, Plaintiff alleges that on November 7, 2021, Jane Doe 4 told him that a nurse practitioner was ending his Robaxin on November 14, 2021.  [doc. #s 14, pp. 9-10; 21, p. 7]. Plaintiff suggests that Jane Doe 4 continued giving him Robaxin until November 30, 2021, but then she stopped.  [doc. # 21, p. 7].  Plaintiff asked defendant about the medication, and she reiterated that he was supposed to stop receiving the medication on November 14, 2021.  *Id.*  It is unclear if Plaintiff is seeking relief for these actions, considering he suggests that defendant benefitted him by supplying him with medication beyond the date he was supposed to stop receiving it.  Stretching the allegations in Plaintiff's favor, though, perhaps he is speculating that because defendant continued supplying the medication beyond November 14, defendant lied about the nurse practitioner ending his Robaxin regimen.  Even construed liberally and in his favor though, Plaintiff's claim is not plausible.  The Court should dismiss this all-too-vague claim because plausibility does not equate to possibility.

Plaintiff next claims that on December 27, 2021, "after not getting his Prilosec since [December 18, 2021], Plaintiff asked [Jane Doe 4] to check on it for him and she said that he would no longer get it because the facility would no longer provide it . . . ."  *Id.* at 8.  Jane Doe 4 added that the commissary "will start" selling the medication and that Plaintiff could buy it there. *Id.*  Plaintiff, however, does not allege that Jane Doe 4 (1) caused the facility to stop providing Prilosec or (2) caused the commissary's failure to stock or sell certain medication.  *See James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) ("A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.").  The Court should dismiss this claim.

Next, Plaintiff claims that Jane Doe 1 failed to "order medications in a timely manner[,]" failed to ensure that he received medications once they arrived, and failed to "follow up on

medications that [were] ordered but not delivered." [doc. # 21, p. 6]. Plaintiff does not describe deliberate indifference. *See Boyd v. Monroe*, 772 F. App'x 92, 93 (5th Cir. 2019) (finding no Section 1983 claim where the plaintiff alleged that he did not receive all prescribed doses of his medications); *Garcia v. Fed. Bureau of Prisons*, 459 F. App'x 458, 459 (5th Cir. 2012) (finding that lack of timely treatment, timely dispensing of prescribed medications, and "unexplained delays in dispensing medications" constituted negligence at most); *Marshall v. Patel*, 317 F. App'x 395, 396 (5th Cir. 2009). The Court, however, should invoke its supplemental jurisdiction and retain this claim under a negligence theory.

### 7. John Doe MCC, Secretary James LeBlanc, and DOC Does 1, 2, 3, and 4

Plaintiff alleges that John Doe MCC did "not answer, address, and/or abate issues and violations being done which [were] brought to his attention by the Plaintiff's ARP's." [doc. # 21, p. 8]. He also alleges brusquely: "failure to answer ARP's. Failure to address and/or abate issues brought up in ARP's." [doc. # 14, p. 12]. Likewise, Plaintiff alleges that Secretary James LeBlanc ignored his grievances and pleas to be transferred. *Id.* at 10, 14. He also faults "DOC Does" 1, 2, 3, and 4 for their roles in failing to respond—or assist LeBlanc in responding to—his grievances and ARP requests. [doc. #s 14, p. 14; 21, pp. 9-11].

As above, however, a prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess*, 609 F. App'x at 211. The Court should dismiss these claims. *See* Section 5, *supra.*

### 8. Louisiana Department of Corrections

Plaintiff names the Louisiana Department of Corrections as a defendant. Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the

Constitution.  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  "State agencies . . . are not 'persons' within the meaning of the statute."  *Lumpkins v. Off. of Cmty. Dev.*, 621 F. App'x 264, 268 (5th Cir. 2015) (*quoting Will*, 491 U.S. at 71)).

The Louisiana Department of Public Safety and Corrections is not a "person" under Section 1983.  *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and DPSC are not persons . . . .").  Accordingly, the Court should dismiss Plaintiff's claims against the Louisiana Department of Corrections.

**9. Transfer**

Plaintiff asks the Court to transfer him to a DOC facility and to prevent his transfer "to anywhere but a DOC facility."  As above, a prisoner has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another.  Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department.  The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department."  LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss these requests.

**10. Medical Parole**

Plaintiff asks the Court to grant "medical parole."  This constitutes a request for release from confinement.  *See Kennedy v. State of Texas Pardons & Paroles*, 136 F. App'x 712, 713 (5th Cir. 2005); *Thomas v. Torres*, 717 F.2d 248, 249 (5th Cir. 1983); *Watson v. Briscoe*, 554 F.2d 650, 652 (5th Cir. 1977).

Habeas corpus relief is unavailable through a civil rights action.  *See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (any claim attacking the validity or duration of confinement must be raised in a habeas corpus petition); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  "A habeas petition . . . is the proper vehicle to seek release from custody."  *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).  The Court should therefore dismiss Plaintiff's habeas corpus request from this civil rights action.

Plaintiff may pursue his request for parole in a habeas corpus action.  The undersigned cautions that Plaintiff must first exhaust all of his available *state* remedies before he may obtain habeas corpus relief in this Court.[13]  The undersigned also cautions that habeas corpus relief is generally unavailable as a remedy for claims that are not related to the cause of the prisoner's confinement.  *See generally Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).

<u>**Recommendation**</u>

For the reasons above, **IT IS RECOMMENDED** that the Court **DISMISS** the following claims as frivolous and for failing to state claims on which relief may be granted:

(1) Plaintiff Craig Joseph Aucoin's claims against MPCC;

---

[13] *See* LA. REV. STAT. § 15:574.20; 22 LA. ADMIN. CODE Pt XI,  307; LA. REV. STAT. § 15:1177.

(2) Plaintiff's claims against Williams concerning: (a) threatening him with lockdown; (b) a three-month delay in blood work; (c) not receiving a prescribed increased dosage of Robaxin, a refill of Robaxin and Cymbolta prescriptions after September 11, 2021, enough Robaxin on October 18, 2021, any Robaxin after November 30, 2021, any Prilosec after December 18, 2021, and any Cymbalta after December 30, 2021; (d) failing to transfer Plaintiff to another facility; and (e) housing Plaintiff in general population instead of in a medical dormitory;

(3) Plaintiff's Section 1983 claims against Medical Company MCC and Security Management, LLC;

(4) Plaintiff's claims against the Warden of MPCC;

(5) Plaintiff's claims: (a) that Jane Does did not ensure that he received Prilosec medication after July 18, 2021; (b) that on October 11, 2021, a Jane Doe told him that his medication "hadn't come in[,]" that it was ordered, and that she would order it again; (c) that on October 18, 2021, Jane Doe 4 "called a nurse practitioner to lower [his] dosage of Robaxin because she thought [he] was getting too much"; (d) that on November 7, 2021, Jane Doe 4 told him that a nurse practitioner was ending his Robaxin medication on November 14, 2021; (e) that on November 30, 2021, he did not receive any Robaxin; (f) that on December 27, 2021, Jane Doe 4 stated that she would no longer supply him with Prilosec and that he would have to obtain it through the commissary; and (g) Plaintiff's Section 1983 claims against Jane Doe 1 for failing to "order medications in a timely manner[,]" failing to ensure that he received medications once they arrived, and failing to "follow up on medications that [were] ordered but not delivered";

(6) Plaintiff's claims against John Doe MCC, the DOC, Secretary James LeBlanc, and DOC Does 1, 2, 3, and 4;

(7) Plaintiff's request for a transfer.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for medical parole be **DISMISSED WITHOUT PREJUDICE** to his right to pursue the relief in a separate habeas corpus proceeding after he exhausts all of his state remedies.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

30

party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 14th day of March, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge